William L. Bruner, Appellant, v. Estate of Milton J. Wolford, Deceased, Appellee.

Gen. No. 8,636.

Opinion filed October 13, 1933.

COLFAX T. MARTIN and ARTHUR R. HALL, for appellant.

JAMES C. WOODBURY and GUNN, PENWELL & LINDLEY, for appellee.

MR. PRESIDING JUSTICE NIEHAUS delivered the opinion of the court.

On May 2, 1929, the appellant, William L. Bruner, filed a claim against the estate of M. J. Wolford, deceased, in the probate court of Vermilion county. The claim was for the principal sum of a $2,000 promissory note of which he was the assignee and accrued interest thereon; and other items amounting to a total sum of $2,369.14. The executors of the Wolford estate entered their appearance and waived process of summons and filed their objections to the claim. Thereafter the appellant amended his claim reducing the amount claimed to the sum of $1,771.33. The probate court heard the evidence concerning the claim; and on March 30, 1931, allowed it against the Wolford estate as a sixth class claim. An appeal was prosecuted from the judgment of the probate court to the circuit court, where a hearing *de novo* was had. With the approval of the circuit court, the parties entered into a stipulation before the hearing that the narrative transcript of the evidence from the probate court should be taken as the evidence in the case. The following narrative of the evidence taken from appellee's brief is a sub-

stantially correct statement of the facts shown by the transcript of the evidence from the probate court:

On the 29th day of January, 1887, James H. Barkley, a resident of Danville, Illinois, and possessed of a considerable estate, both real and personal, and Cynthia A. Barkley, his wife, made their respective wills, and on March 24, 1915, each of them made codicils to their respective wills. The two wills devised all of their respective estates each to the other, for and during the life of the survivor, and each nominated the other to be executor of the respective wills; and further, the said James H. Barkley nominated Milton J. Wolford to be executor of his will, in case his wife should not survive him. Both wills directed the distribution of the remainder of said estates, if any remained after the death of the survivor, in the same manner. The codicils aforesaid merely made some additional specific bequests and some slight changes in the distribution of the remainders and are substantially in the language, except that in the codicil to her will the said Cynthia A. Barkley provided for the appointment of said Milton J. Wolford as executor of her will in case her husband should not survive her.

Each codicil provided that the executor should sell all of the real estate and divide the money as directed in the will. And in each codicil appears the following clause: "And I further direct that my executor shall distribute, so far as he can, the notes and mortgages I may leave, without collecting the same, to the various heirs and legatees." This language is important in view of the contention of appellant that Milton J. Wolford, who finally became executor of both wills, made a partial distribution "in kind" of said estates.

James H. Barkley died first, in April, 1915, and, in accord with his said will, the said Cynthia A. Barkley became the sole beneficiary thereof for and during her life, and became executor of the will of her hus-

band and continued to administer said estate until March 28, 1916, when she was adjudged to be a distracted person and the said Milton J. Wolford was appointed conservator of her estate and continued as such conservator until July 27, 1920, when the said Cynthia A. Barkley died, and he became executor of her estate and continued the administration of both estates until his discharge on April 19, 1924.

The appellant, William L. Bruner, and the said Ida B. Connell, Joe H. Bruner, J. G. Fine and Ellsworth Sager are among the heirs, or are representatives of heirs, of said Barkley estates and shared in the final distribution of said estates by the executor, Milton J. Wolford.

On the 18th day of March, 1924, the said Milton J. Wolford, as executor, filed his final account in the probate court. Examination of that account discloses that he charged himself, as executor, among other assets of said estates, with ''Securities on Hand—$24,596.80,'' and that, after deducting credits, he showed a balance on hand on the 18th day of March, 1924, of ''Cash and Securities—$50,069.84.'' The probate journal shows presentation of said account on the last mentioned date, approval of said account and an order to distribute said balance *immediately*, and to file report of distribution.

On April 19, 1924, said executor presented his final report of distribution and the same was approved by the court and ordered to be recorded.

After filing his final account said Milton J. Wolford caused to be sent to all of the distributees of the Barkley estate notice that he would file his final report of distribution and ask to be discharged on April 19, 1924. Attached to said notice is an affidavit of one Gertrude C. Koch that, on various dates between March 29, 1924, and April 8, 1924, she sent by mail to each of the parties named in the said report of distribution a no-

tice of intention to file final report and ask for the dis=
charge of the executor on the said April 19, 1924.

It appears from the evidence that such a notice was
mailed to and received by the said William L. Bruner.
This notice indicates that part of the final distribution
of the Barkley estates was "in kind," and the evidence
shows that William L. Bruner (and the other four
claimants) was one of the distributees "in kind," and
that he received from said executor, as his distributive
share of the Barkley estates, one of five notes of $2,000
each and a check for $397.63, aggregating $2,397.63,
which is shown by the probate court's order of final
distribution to be the amount of the said William L.
Bruner's distributive share of said estates.

The evidence shows the origin of the five notes of
$2,000 each, above referred to, to be as follows:

On March 10, 1920, George Tuttle secured a loan of
$10,000 from M. J. Wolford, conservator of Cynthia A.
Barkley, distracted, which loan was for five years, end-
ing March 10, 1925, and was secured by mortgage on
lands. Three months later, on June 13, 1920, Cynthia
A. Barkley died and said Milton J. Wolford became
executor of her will, heretofore mentioned.

The said $10,000 loan was made by Wolford, as con-
servator and not as executor, and was from funds of
Cynthia A. Barkley, and upon her death became part
of her estate, and, in making said loan, the conservator
was but performing his duty in investing the estate in
his hands.

In March, 1924, Wolford, having sold all of the
Barkley real estate and converted it into cash, as di-
rected in both of the Barkley wills, was prepared to
make final distribution of the money on hand and of
the securities he held as part of said Barkley estates.
So he filed, in the probate court, his final account, as
aforesaid, showing in his hands for final distribution,
in cash and securities, $50,069.84, and was ordered by

the court, as aforesaid, to make immediate distribution of said balance. Said final account shows that of said amount for final distribution, the sum of $24,596.80 was in securities, and said court order directs the distribution of the balance on hand among some 35 named distributees, but does not direct distribution in cash. Such direction would have been contrary to the express direction in the wills hereinbefore referred to.

Among the securities referred to was the $10,000 Tuttle note, which would not become due until March 10, 1925.

As none of the distributees named in the court's order of final distribution was entitled to so large a sum, it became necessary to split up this loan; so, on March 15, 1924, the said Wolford procured the said Tuttle to make a new mortgage, due March 15, 1929, to secure the same sum of $10,000, but divided it into five notes of $2,000 each, payable to one J. F. Geddes, trustee, who immediately indorsed them "Without recourse." These five notes he sent to said William L. Bruner and his coappellants in partial settlement of the sum of $2,397.63 due to each of them. Accompanying each of these $2,000 notes was Wolford's check for $397.63 and a notice of final distribution above quoted.

Appellant retained one of these notes without protest and made no objection to the court's approval of the report of final distribution, nor to the discharge of the executor on April 19, 1924. Appellants had ample time, after receipt of said notes, to make any investigation they desired as to the value of the property securing the mortgage, but the record does not disclose any such effort by any of them.

After the making of the notes and mortgage referred to, Tuttle paid the interest thereon for two and a half years, and then defaulted on interest coupon notes due on March 15, 1927. The mortgage provided for fore-

closure in case any of the interest notes were not paid when due, but, notwithstanding such privilege, the appellants took no steps to collect their $2,000 notes until the 1929 October term of the circuit court of Vermilion county, when they filed their bill to foreclose said mortgage and made appellees, as executors of the will of Wolford, parties defendant, claiming the estate was liable. The property upon foreclosure sale sold for $4,000.

Appellant, on May 2, 1929, filed his claim against Wolford estate on a note for $2,000; but the record shows no note upon which to base his original claim. The amended claim filed April 5, 1931, is based on an alleged unlawful loan by Wolford and written guaranty of said note mentioned in original claim, which was received by him in lieu of money due him as a share of the Barkley estate.

In his brief, the appellant assigns the errors following; and in connection therewith states his reasons why the judgment of the circuit court disallowing the claim should be reversed:

The circuit court erred in not finding appellant's evidence sufficient to sustain a judgment in appellant's favor. Manifest errors on the part of that court clearly appear from the following points:

Milton J. Wolford as executor of the estates of James H. Barkley and Cynthia A. Barkley, both deceased, was guilty of a *devastavit* and became liable to appellant for the loss suffered by appellant by reason thereof:

The executor had no legal right whatsoever to loan any funds belonging to said estates.

Neither the will of James H. Barkley nor the will of Cynthia A. Barkley gave the executor any power to loan funds belonging to either estate.

The executor loaned the trust funds in his hands at his peril and he is liable to make good appellant's loss.

The executor had no legal right to keep said estates open for nearly four years after the death of Cynthia A. Barkley.

The executor had no legal right to make a new loan and take a new mortgage on real estate for the purpose of extending or taking up a loan previously made without authority, by himself as conservator, on the same real estate, said loan being then about two years in arrears on interest payments.

The executor in order to get appellant to take a note in lieu of cash guaranteed the note to be perfectly good and became personally liable for appellant's loss on the note.

It is sufficient to say, concerning the first and second reason above urged, that the evidence in the record does not disclose that the deceased Wolford loaned any of the funds of the James H. Barkley and Cynthia A. Barkley estate, of which he was the executor; but the evidence shows that the funds referred to as having been loaned by Wolford were loans made while he was acting as conservator for Cynthia A. Barkley, in the regular course of the administration of his conservatorship; and that the loan in question was secured by a mortgage on real estate to secure the five promissory notes of $2,000 each, which represented the loan, and which afterwards became a part of the assets of the Cynthia A. Barkley estate; and that these notes were distributed among the heirs and devisees of her estate; and that the appellant was one of the distributees; and that he accepted the note which is now the basis of his claim, together with the money constituting his share in the estate, in full satisfaction, and settlement and discharge of his distributees' share therein; and held the note as assignee for several years collecting the accruing interest thereon. There is no evidence in the record from which it can be reasonably inferred that the real estate covered by the

$10,000 mortgage taken by Wolford as security did not fully secure the notes referred to. And it is reasonable to assume that if the appellant had had any question about the sufficiency of the security, he would not have accepted the note nor retained it for the purpose of having the benefit of collecting the interest thereon. There is no evidence in the record that the deceased Wolford was guilty of a *devastavit* as executor of the James and Cynthia Barkley estates, or either of them; nor does the record disclose any evidence of any guaranty made by the deceased Wolford for the payment of any of the notes referred to, or the note held by the appellant; nor is there any evidence upon which a personal liability of the deceased Wolford could be based; or of any liability of the Wolford estate for the payment of appellant's claim. The finding of the court disallowing the claim was in accordance with the evidence and the law; and the judgment is therefore affirmed.

*Affirmed.*